**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

CASE NO. 1:12-cv-23466-SEITZ/SIMONTON

JMA, INC., a Florida corporation, J.A.
LaPADULA, INC., a Florida corporation,
JOSEPH A. LaPADULA, an individual,
SCOTT D. MATHISON, an individual,
SOUTHERN PACE, INC., a Florida
corporation, ACL of SOUTH FLORIDA,
INC., a Florida Corporation and ST. JUDE
MEDICAL S.C., INC., a Minnesota
corporation,

      Plaintiffs,

vs.

BIOTRONIK, INC., an Oregon
corporation,

      Defendant.
_____/

**PLAINTIFF ST. JUDE MEDICAL, S.C., INC.'S MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL THIRD PARTY BOSTON SCIENTIFIC
CORP. TO PRODUCE DOCUMENTS RESPONSIVE TO SUBPOENA**

**I.    INTRODUCTION**

On October 3, 2013, St. Jude Medical S.C., Inc. ("St. Jude"), a Plaintiff/Counterclaim Defendant in the above referenced litigation served a Rule 45 Subpoena *Duces Tecum* upon third party Boston Scientific Corp. ("Boston Scientific") for the production of documents in litigation pending in the Southern District of Florida styled *JMA, Inc., St. Jude S.C., Inc., et al. v. Biotronik, Inc.*, Case No. 12-cv-23466 ("Main Action"). Attached as Exhibit A to the Declaration of Christopher P. Demetriades, Esq. ("Demetriades Dec."), filed in support of the

Motion to Compel, is a copy of the Subpoena to Produce Documents directed to Boston Scientific.

Also attached to the Demetriades Dec. as Exhibits B and C, respectively, are copies of (i) the First Amended Complaint pending against Biotronik, Inc. ("Biotronik"), an Oregon corporation; and (ii) the Counterclaims pending against Plaintiffs/Counterclaim-Defendants (including St. Jude). Plaintiffs/Counter-Defendants, including St. Jude, allege in the Main Action that Defendant/Counter-Plaintiff Biotronik, Inc., as seller of cardiac rhythm management, or "CRM" devices[1], materially breached its now terminated, independent sales representative agreements with Plaintiffs/Counter-Defendants, Joseph A. LaPadula and Scott D. Mathison ("Rep Agreements"), that are the subject of the claims and counterclaims pending in the Main Action.[2] Plaintiff/Counter-Defendants allege that Biotronik materially breached the Rep Agreements by, *inter alia*, acquiescing in, and also facilitating, a certain Biotronik original equipment manufacturing, or "OEM" program, wherein Biotronik's sister company, Biotronik GmbH & Co. KG ("Biotronik Germany"), supplied Biotronik CRM devices to competing CRM device companies to resell in direct competition with members of Biotronik's own sales force,

---

[1] CRM products include implantable pacemakers, defibrillators, and cardiac resynchronization products, along with the "lead wires" that connect these lifesaving implantable devices to a patient's heart.

[2] In the Main Action, the parties have filed dueling claims centering on the employment by St. Jude of Messrs. LaPadula and Mathison, who currently sell cardiac rhythm management ("CRM") devices for St. Jude but previously sold CRM products for Biotronik as Independent Sales Representatives. In response to a series of violations of the Rep Agreements related *inter alia* but not solely to the OEM program, and after Biotronik terminated the Rep Agreements when it had learned of LaPadula and Mathison's dissatisfaction with Biotronik's actions, LaPadula and Mathison sued Biotronik for breach of the Rep Agreements. St. Jude and the Plaintiffs then sought declaratory relief that their employment of LaPadula and Mathison did not violate restrictive covenants in the Rep Agreements.[2] Biotronik counterclaimed against LaPadula and Mathison for monetary damages and to enforce restrictive covenants contained in the Rep Agreements. Biotronik also sued St. Jude for tortious interference with LaPadula and Mathison's terminable-at-will Rep Agreements.

including Mr. LaPadula and Mr. Mathison, whom St. Jude hired after Biotronik, Inc. terminated the Rep Agreements.[3] Respondent herein, Boston Scientific, is among those competing CRM device companies who (or whose affiliates) participated in, and directly benefitted from, the aforesaid OEM program. St. Jude and its Co-Plaintiffs/Counter-Defendants have been actively seeking first-party discovery from Biotronik in the Main Action. Biotronik, however, has resisted based upon, *inter alia*, the notion that its German sister (as opposed to it) performed and implemented the OEM program, and thus information in its possession, custody or control relating to the OEM program, is limited.[4] The Subpoena that is the subject of this Motion is reasonably calculated to procure documents and information that are germane to the OEM program (including Biotronik's involvement therein) and that include (but are not necessarily limited to) documents and information that Biotronik claims it does not have and documents that Boston Scientific is particularly well situated to produce.

Nevertheless, Boston Scientific has asserted wholesale objections and refused to produce documents, except for one heavily and unnecessarily redacted agreement with its predecessor Cardiac Pacemakers, Inc. *See* Demetriades Dec. at Exhibit D, Boston Scientific Objection. Although St. Jude has offered to compromise in an effort to resolve the matter, Boston Scientific has persisted in its objections, thereby thwarting St. Jude and the Representatives' ability to prepare their case for trial. Boston Scientific's action thereby necessitated the filing of this Motion.

---

[3] Underlying the OEM program were supply agreements between the competing CRM device companies and Biotronik GmbH & Co., KG, a sister company of Biotronik, Inc. Biotronik, Inc., however, facilitated the program in various ways, including the procurement of FDA approval that enabled the competing CRM companies to sell Biotronik CRM devices in direct competition with Biotronik, Inc.'s own sale representatives.

[4] The Boston Scientific entity is represented in this action by the same firm that is representing Boston Scientific, who was also served a Subpoena in this action for information about a CRM program that it ran. Boston Scientific and St. Jude are both competitors in the CRM industry.

## II. ST. JUDE'S SUBPOENA IS NARROWLY TAILORED

St. Jude's subpoena is narrowly tailored and imposes no undue burden on Boston Scientific. St. Jude's Subpoena seeks the following:

- Contract Agreements related to the OEM programs (Requests 1 & 2)
- Marketing materials for OEM sales (Requests 3 & 4)
- Documents related to the sales and servicing of OEM products (Requests 5-8)
- Communications related to the FDA approval process for the sales of OEM products (Requests 9-11)
- Sales, sales support and complaint related documentation related to the OEM program (Requests 12, 18-20)
- Labeling, packaging and manual for OEM products (Requests 13-17)

All of these Requests are germane to the extent and scope of the OEM program and Biotronik's involvement in it. Biotronik has posed no objection to the Subpoena. Boston Scientific nonetheless contends that the requests are overly broad as to time and geographic scope, seek materials obtainable from Biotronik or the public domain, and are irrelevant

St. Jude has attempted to resolve this dispute through a "meet and confer" teleconference in early November 2013, followed by substantial written correspondence.. In the course of those efforts, St. Jude already has provided Boston Scientific with a copy of the Stipulated Protective Order entered in the Main Action that allowed Boston Scientific to designate and produce certain documents on an "Attorneys Eyes Only" basis. *See* Email attached as Exhibit E, Demetriades Dec. St. Jude also has offered to limit the time and scope of the requests. *See* Demetriades Dec. at Exhibit F, December 20, 2013 Letter. Pursuant thereto, St. Jude further offered to accept exemplars, pictures and samples wherever such accommodations could be made. *Id.*

Boston Scientific, however, has been uncooperative and dilatory, having produced nothing more than a heavily redacted supply agreement between it and Biotronik Germany in connection with the OEM program. That miniscule production first came several weeks after the

initial "meet and confer" teleconference, wherein Boston Scientific promised to formulate a good-faith proposal to produce documents that would satisfy St. Jude's needs. However, no proposal ever came. Instead, Boston Scientific ultimately reiterated its position and maintained its refusal to produce responsive material while purporting still to be working on some compromise. *See* Demetriades Dec. at Exhibit G, December 30, 2013. St. Jude thus is left with no alternative but to file this Motion to Compel.

### III.     ARGUMENT

#### a.     The Scope of Discovery is Broad

Under Rule 26(b)(1) of the Fed.R.Civ.P. "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Courts construe Rule 26 liberally. *See Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("The deposition-discovery rules are to be accorded a broad and liberal treatment."); *EEOC v. Electron Term Inc.*, 167 F.R.D. 344, 346 (D. Mass. 1996) ("[r]elevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility that it might be relevant to the subject matter of the action") (D. Mass. 2013) Fed.R.Civ.P. 45 governs documents and deposition productions from non-parties by subpoena; the scope of discovery thereunder is the same as under Rule 26. *See*  Fed.R.Civ.P. 45(d)(1), Advisory Committee Note ("[t]he changes make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules."). *See also In re: New England Compounding Pharmacy, Inc. Product Litigation* 2013 WL * 6058483 (D. Mass. 2013). Further, pursuant to the express terms of Rule 45, "for good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."

### b.     The Party Objecting to Discovery Carries the Burden to Justify a Refusal to Comply

When the discovery at issue is directed to non-parties, courts consider such factors as relevance, the requesting party's need for the documents, the breadth of the document request, and the time period covered by the request. *Behrend v. Comcast Corp.*, 248 F.R.D. 84, 86 (D. Mass. 2008). *See, e.g., Dermer v. LaMontagne*, 1991 WL 1627978 * 2 (D. Mass. 1999). The objecting party carries the burden of showing that the discovery should not be had. *Flag Fables, Inc. v. Jean Ann's Country Flags Crafts, Inc.,* 730 F. Supp. 1165, 1186 (D. Mass. 1989) ("a party resisting discovery has the burden of showing some sufficient reason why discovery should not be allowed."). Moreover, simply asserting that a subpoena is burdensome is generally insufficient; specific evidence of burden is required. *Hertz v. Luzenac Am., Inc.,* 2006 WL 994431, at *12 (D. Colo. Apr.13, 2006) (the alleged burden must usually be established "by Declaration or other reliable evidence.").

While a court should consider attempting to ameliorate any burden, the Federal Rules expressly recognize and anticipate that third parties may be subjected to some inconvenience and burden in responding to a third party subpoena. *See, e.g., S.E.C. v. Fuhlendorf,* 2010 WL 3547951 at * 3 (D. Colo.) ("Nor is it sufficient to argue that a third party unrelated to the litigation should not be subjected to the burden of complying with the subpoena. Fed.R.Civ.P. 45 contemplates that third parties may be subject to some inconvenience in responding to subpoenas. Only demonstrable undue inconveniences warrant protection").

### c.     The Subpoena Seeks Discoverable Materials

Under the above factors, it is clear that the Subpoena served by St. Jude seeks discoverable documents and does not subject Boston Scientific to any unreasonable burden. The

6

specific requests, objections and arguments directed to each Request are set forth in Section IV below, but the principal arguments for production are consistent and run throughout.

        i.        **The Boston Scientific Subpoena Seeks Information Relevant to the Underlying Litigation.**

The Subpoena seeks information directly relevant to one of the principal issues in the Main Action--the factual scope and legal impact of the OEM program under which Biotronik's sister entity, with the cooperation of Biotronik, manufactured CRM products to competitors, such as Boston Scientific, in territories and to accounts to which Biotronik's sales representatives, such as Plaintiffs LaPadula and Mathison, had enforceable contractual rights, with which Biotronik had a contractual duty not to interfere. The Subpoena seeks information directly relevant to the OEM program.

        ii.        **St. Jude Either Cannot Obtain Responsive Documents Elsewhere, Or Is Being Told By Biotronik That It Does Not Have Access To Such Documents.**

Evidence as to the extent and scope of the OEM programs is not only relevant to the Plaintiffs/Counterclaim Defendants' claims and defenses, much of this information is available only from them. St. Jude, for example, cannot determine Boston Scientific's sales volume or particular sales amounts—facts relevant to the scope of the OEM program as well as the St. Jude, LaPadula and Mathison's damages and their defenses to Biotronik's claims—except by records maintained by Boston Scientific. Boston Scientific's product manuals, labeling and packaging inserts also are likely to provide evidence of the extent of the Biotronik OEM program as well as Biotronik's direct involvement in it. Finally, St. Jude and the Representatives need this information from Boston Scientific, as it is unavailable from Biotronik. Indeed, Biotronik has taken the position that it does not have possession, custody or control over any OEM related

source documents as the OEM agreements were with Biotronik Germany, not Biotronik, and that as a practical matter it does not have access to the OEM source documents. Biotronik has claimed that it does not even have possession of copies of the operative Boston Scientific OEM agreements because those agreements are with Biotronik Germany.[5]

### d. The Breadth and Temporal Scope of the Requests are Limited to Relevant Materials.

The requests here are properly tailored as to scope and duration. As such, St. Jude has met its Rule 45 burden to minimize any unreasonable burden on the responding party.

---

[5] In this regard, the cases cited by Boston Scientific in support of its objections do not support its position. Boston Scientific, for example, cites *Cusumano v. Microsoft Corp.,* 162 F.3d 708, 717 (1st Cir. 1998), for the proposition that discovery should not be allowed from a third party if that discovery is also available from a litigant. Here, of course, Biotronik has indicated that it does not have access to and cannot produce this material; therefore, the material is not equally available from the party in litigation. Beyond that, *Cusumano* is not as broad as Biotronik suggests. In *Cusumano* the Court refused to compel third party journalists who had conducted extensive research in connection with a book they were producing over the "browser wars" of the computer industry in the 1990's to turn over research materials they had compiled based on interviews with industry insiders who had spoken with the researchers and to whom the researchers had pledged confidentiality.

In balancing the parties' interests, the Court concluded that to allow this discovery from these third parties would have a chilling impact on future research and on the First Amendment right to the free flow of information as insiders would be less likely to speak to researchers and journalists. Moreover, Microsoft could have taken the depositions of these individuals themselves. These factors led the Court to refuse to compel production. *Id.*

Similarly, *American Standard v. Pfizer*, 828 F.2d 734 (Fed.Cir. 1987), which Boston Scientific cites in support of its objections, offers little support to Boston Scientific. There, the Court merely held that where confidential information may be available from other sources, the need for it in discovery may be diminished. In *American Standard*, the Court stressed that American Standard already had access to at least some of the needed confidential information and that the rest was also available to it for use in the litigation. *Id.* at 743. Here, of course, this is not the case. St. Jude does not have access to much of the information except through Boston Scientific especially given Biotronik's assertion that it has no access.

Here, there are no similar concerns. St. Jude does not enjoy the same access to alternative sources for this information that the parties did in the *Cusumano* and *American Standard* cases. There are no First Amendment concerns and, more importantly, Boston Scientific, although not a litigant below, is nevertheless a competitor of St. Jude and Biotronik. Thus, its interests in this litigation are not nearly as remote as the interests of the third parties in the cases above.

Nevertheless, even though the Requests were limited and imposed no unreasonable undue burden, St. Jude offered to even further limit the production in an effort to minimize the impact on Boston Scientific. Thus, for example, St. Jude limited the geographic scope to only agreements at issue and sales in the US. St. Jude further limited its Requests to encompass operative and current documents (as of the date of the filing of the Complaint), rather than historical documents. And St. Jude offered to accept representative samples where appropriate. Nevertheless, Boston Scientific has refused to produce documents responsive to the narrowed requests or suggest an acceptable resolution.

### e. Boston Scientific has Produced No Evidence of Undue Burden

Boston Scientific has produced no evidence of undue burden in producing the documents. While it has argued that complying with the Requests will be difficult, costly and time consuming, no evidence supports this. *See Hertz v. Luzenac Am., Inc.,* 2006 WL 994431, at \*12. The Requests are narrowly drawn. Moreover, St. Jude has repeatedly indicated its willingness to work with Boston Scientific to minimize any burden, but to no avail.

## IV. SPECIFIC REQUESTS AT ISSUE

Pursuant to L.R. 37.1(b)(4), the following are the Requests at issue and Boston Scientific's response together with St. Jude's argument as to each:

> **Request No. 1:** Any and all Biotronik CRM Product Agreements between BSC and Biotronik presently in effect, or that was ever in effect at any time from January 1, 2006 to the present.
>
> **Response:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, improperly seeks the disclosure of confidential information and trade secrets from a competitor, and seeks documents relating to communications and exchanges between Boston Scientific, a non-party to this litigation, and Biotronik, a direct party to this litigation, which are readily available to St. Jude through direct discovery from Biotronik. A non-

party should not be burdened with responding to discovery that is ascertainable from a party to the litigation through direct discovery. *See Cusumano v. Microsoft Corp.,* 162 F.3d 708, 717 (1st Cir. 1998) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."); *American Standard, Inc. v. Pfizer, Inc.,* 828 F.2d 734, 743 (Fed. Cir. 1987). (holding that the need for discovery of confidential information "is diminished when the information is available elsewhere.")

## **Argument**

The single document that Boston Scientific produced is a heavily redacted copy of the agreement between its predecessor, Cardiac Pacemakers, Inc. and Biotronik-Germany. Biotronik-Germany is not a party to this litigation. During the meet and confer process, St. Jude confirmed that this request was limited to agreements operative within the geographical scope of the United States and agreed to limit the request to cover only those agreements presently operative or since 2010.[6] Upon information and belief, the redacted agreement may be the only responsive agreement (a fact which Boston Scientific has yet to confirm despite request) but St. Jude's principal issue with Boston Scientific's response is that the document is heavily and unnecessarily redacted given that it was produced under an "attorneys eyes only" designation. Moreover, the redactions appear to redact information extremely relevant to the issues in dispute here. Thus the redactions include information related to:

- The identity of the individual who signed the agreement;
- Information as to the territorial scope of the agreement;
- Information on warranties; and
- Sales and pricing information.

All of this information is relevant to the Main Action as it will show the scope and extent of the OEM program and is relevant to Biotronik's damage claim. Any legitimate concern by Boston

---

[6]St. Jude agreed to limit all requests to documents and materials pertinent to United States sales and to encompass only those currently in effect or from 2010 forward. Furthermore, for the sake of efficiency, this agreement and the fact that there is a Stipulated Protective Order in place protecting confidential and/or trade secret information will not be repeated in each argument section although it applies throughout except where specifically noted.

Scientific is more than adequately addressed by the Stipulated Confidentiality Order in place and therefore there is no legitimate basis to refuse to produce an un-redacted version forthwith.

> **Request No. 3:** Any and all press releases, or marketing or promotional materials, ever issued by BSC that relate to any Biotronik CRM Product Agreement between BSC and Biotronik, or which relate to the sale of Biotronik CRM products by BSC, whether under any Biotronik or BSC brand name or trademark.
>
> **Response:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, and improperly burdens Boston Scientific to provide materials readily available to the general public.

### Argument

The materials sought above are relevant to showing not only the extent of the OEM program, but will also prove how the Biotronik name was used in connection with marketing efforts. These facts are relevant to showing not only the extent of the OEM program but also the extent to which these other entities capitalized on Biotronik's name and reputation. This latter point is key because it would show that Biotronik itself, the owner of its U.S. trademark, acquiesced to the program which compromised the rights of its independent sales forces like LaPadula and Mathison. Moreover, Boston Scientific is uniquely qualified to produce this material, as Boston Scientific is the source of the marketing materials.

While all materials would therefore be relevant, St. Jude, in an effort to accommodate Boston Scientific, agreed to further limit the request to exemplars of marketing materials. Nevertheless, Boston Scientific has wholly refused to provide anything in response.

> **Request No. 5:** All communications between (a) BSC (including any representative or attorney of BSC) and (b) Biotronik (including any representative or attorney of Biotronik) relating to any Biotronik CRM Product Agreement between BSC and Biotronik.

**Response:**  Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, improperly seeks the disclosure of confidential information and trade secrets from a competitor, and seeks documents relating to communications and exchanges between Boston Scientific, a non-party to this litigation, and Biotronik, a direct party to this litigation, which are readily available to St. Jude through direct discovery from Biotronik.

**Argument**

This material is relevant to the scope of the OEM program as well as Biotronik's complicity therein.  Moreover, while the request does seek communications with Biotronik the litigant, it also seeks documents between Boston Scientific and non-party Biotronik-Germany, material which Biotronik has disavowed the ability to produce.  Moreover, as Biotronik Germany is beyond the subpoena power of the presiding Court, this latter material is solely available from Boston Scientific.

> **Request No. 6:**   All communications between (a) BSC (including any representative or attorney of BSC) and (b) Biotronik (including any representative or attorney of Biotronik) relating to any Biotronik CRM Product manufactured for, or otherwise supplied to, BSC.
>
> **Response**:  Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, improperly seeks the disclosure of confidential information and trade secrets from a competitor, and seeks documents relating to communications and exchanges between Boston Scientific, a non-party to this litigation, and Biotronik, a direct party to this litigation, which are readily available to St. Jude through direct discovery from Biotronik.

**Argument**

See argument as to Request No. 5.

> **Request No. 9:**   All communications between (a) BSC (including any representative or attorney of BSC) and (b) Biotronik (including any representative or attorney of Biotronik) relating to, referencing or providing copies of any communications or approvals from the U.S. Food & Drug Administration (the

"FDA") or any equivalent foreign regulatory agency, relating to the ability to sell any Biotronik CRM Product in the United States, including, but not limited to, communications related to premarket approval, post-market monitoring, regulations and/or oversight as to any Biotronik CRM Product manufactured for, or otherwise supplied to, BSC.

**Response**:  Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, improperly seeks the disclosure of confidential information and trade secrets from a competitor, and seeks documents relating to communications and exchanges between Boston Scientific, a non-party to this litigation, and Biotronik, a direct party to this litigation, which are readily available to St. Jude through direct discovery from Biotronik.

### Argument

In addition to the arguments referenced above in response to No. 5, St. Jude notes that this is a heavily regulated industry in which the FDA must approve the use of medical devices for implantation.  Because under the OEM program, components provided under the agreement with Biotronik Germany were being used in conjunction with Boston Scientific devices, FDA approval would have been necessary.  The document requests here are relevant to that issue and will also show the extent to which Biotronik itself may have assisted in the regulatory process notwithstanding its failure to produce records on the basis that the materials sought pertained to an OEM program with its sister entity.

> **Request No. 10**: All communications between (a) BSC (including any representative or attorney of BSC) and (b) the FDA (including any representative or attorney of the FDA) relating to any Biotronik CRM Product Agreement between BSC and Biotronik.
>
> **Response:**  Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, and improperly seeks the disclosure of confidential information and trade secrets from a competitor.

### Argument

See argument as to No. 9 above.

**Request No. 11:** All communications between (a) BSC (including any representative or attorney of BSC) and (b) the FDA (including any representative or attorney of the FDA) relating to any Biotronik CRM Product.

**Response:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, and improperly seeks the disclosure of confidential information and trade secrets from a competitor.

### Argument

See argument as to No. 9 above.

**Request No. 12:** All documents that BSC received from Biotronik relating to sales of, marketing of or support for any Biotronik CRM Product manufactured for, or otherwise supplied to, BSC.

**Response:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, and improperly seeks the disclosure of confidential information and trade secrets from a competitor, and seeks documents relating to communications and exchanges between Boston Scientific, a non-party to this litigation, and Biotronik, a direct party to this litigation, which are readily available to St. Jude through direct discovery from Biotronik.

### Argument

This request seeks information relevant to the breadth and scope of the OEM program, including documents to which Biotronik's US entity claims to have no access. In this industry, it is common for manufacturers to send personnel to assist during medical procedures such as when the devices are implanted into the patient or when the devices are checked in a physician's office. This request also seeks information as to the technical assistance Biotronik directly provided in connection with the OEM sales.

**Request No. 13:** Samples of each Biotronik CRM Product ever manufactured for, or otherwise supplied to, BSC.

**Response:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, and improperly seeks the disclosure of

confidential information and trade secrets from a competitor, and seeks items from Boston Scientific, a non-party to this litigation, which are readily available to St. Jude through direct discovery from Biotronik, a direct party to this litigation.

**Argument**

This information is relevant to the scope of the OEM program. As set forth in the arguments above, Biotronik has taken the position that this material belongs to its sister entity and, accordingly, it has claimed that it is unable to produce the materials. Boston Scientific is able to produce this material, which would show the full scope of products sold under the OEM program. To accommodate Boston Scientific, St. Jude offered to accept photographs as long as they showed the particular distinctive items sold and marketed under the OEM program and any Biotronik markings or identifiers, but again Boston Scientific has refused to produce anything.

**Request No. 14:** Representative samples of each label for each Biotronik CRM Product ever manufactured for, or otherwise supplied to, BSC.

**Response:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, and improperly seeks the disclosure of confidential information and trade secrets from a competitor, and seeks items from Boston Scientific, a non-party to this litigation, which are readily available to St. Jude through direct discovery from Biotronik, a direct party to this litigation.

**Argument**

See argument in response to No. 13 above.

**Request No. 15:** Representative samples of each package for each Biotronik CRM Product ever manufactured for, or otherwise supplied to, BSC.

**Response:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, and seeks items from Boston Scientific, a non-party to this litigation, which are readily available to St. Jude through direct discovery from Biotronik, a direct party to this litigation.

**Argument**

See arguments in response to No. 13 above.

**Request No. 16:** Representative samples of each user manual associated with any Biotronik CRM Product ever manufactured for, or otherwise supplied to, BSC.

**Response:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, and seeks items from Boston Scientific, a non-party to this litigation, which are readily available to St. Jude through direct discovery from Biotronik, a direct party to this litigation.

**Argument**

See arguments in response to No. 13 above.

**Request No. 17:** Representative samples of each physician's manual that BSC ever provided with, or in relation to, any Biotronik CRM Product sold or offered for sale by BSC.

**Response:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, and improperly seeks the disclosure of confidential information and trade secrets from a competitor, and seeks items from Boston Scientific, a non-party to this litigation, which are readily available to St. Jude through direct discovery from Biotronik, a direct party to this litigation.

**Argument**

See arguments in response to No. 13 above.

**Request No. 18:** Copies of all complaints, communications, papers, pleadings claims or lawsuits relating to any Biotronik CRM Product sold or offered for sale by BSC.

**Response:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, and improperly seeks the disclosure of confidential information and trade secrets from a competitor, improperly seeks the

disclosure of information protected by the attorney-client privilege and seeks items or information from Boston Scientific, a non-party to this litigation, which are readily available to St. Jude through direct discovery from Biotronik, a direct party to this litigation.

### Argument

St. Jude has clarified that it is not seeking any privileged material pursuant to this Request. This Request does, however, seek information relevant to the dispute and that will show information not only as to the scope of the OEM program but Biotronik's direct involvement therein. For example, it is reasonably anticipated that any complaints or issues involving Biotronik manufactured goods would directly implicate Biotronik or potentially involve technical support by Biotronik personnel. This Request is directed at that information and is therefore discoverable, yet Boston Scientific has produced nothing.

**Request No. 19:** Any communication by any BSC agent, employee or sales representative relating to BSC's sale or marketing of any Biotronik CRM Product.

**Response:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, and improperly seeks the disclosure of confidential information and trade secrets from a competitor and improperly seeks the disclosure of information protected by the attorney-client privilege.

### Argument

See arguments in response to Nos. 3, 5 and 12 above.

**Request No. 20:** Any sales or marketing analysis or forecast by any BSC agent, employee or sales representative relating to BSC's sale or marketing of any Biotronik CRM Product.

**Response:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, and improperly seeks the disclosure of confidential information and trade secrets from a competitor.

### Argument

See arguments in response to Nos. 3, 5 and 12 above.

## V. CONCLUSION

For the foregoing reasons, St. Jude respectfully requests that this Court enter an Order compelling Boston Scientific to produce all documents in its possession, custody or control responsive to the Subpoena.

    Respectfully submitted,

    ROSE, CHINITZ & ROSE

    *s/ Alan D. Rose*
    Alan D. Rose (#427280)
    Email: adr@rose-law.net
    One Beacon Street  23rd Floor
    Boston, Massachusetts  02108
    Telephone:  (617) 536-0040
    Facsimile:  (617) 536-4400

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 22, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Alan D. Rose*
Alan D. Rose

## SERVICE LIST

Sean R. Santini, Esq.
Santini Law Firm
ssantini@santinilawfirm.com
1001 Brickell Bay Drive  Suite 2650
Miami, Florida 33131
Telephone:  305-372-7307
Facsimile:  305-372-7308
**Local Counsel for Defendant**

Robert L. Schnell, Jr., Esq. (MN#97329)
Robert.schnell@FaegreBD.com
Faegre Baker Daniels LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota  55402
Telephone:  612-766-7000
Facsimile:  612-766-1600
**Counsel for Boston Scientific Corp. and Sorin Group USA, Inc. and Sorin CRM USA, Inc.**

Sean Donahue, Esq. OSB#79209
sean.donahue@biotronik.com
Donahue & Associates
1625 Umpqua Bank Plaza
One SW Columbia Street
Portland, Oregon 97258-2021
Telephone:  503-226-1084
Facsimile:  503-227-6366
**Lead Counsel for Defendant**