## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| _____ ) | | |
| | ) | |
| **ST. JUDE MEDICAL S.C., INC.,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:14-mc-91022-FDS** |
| | ) | |
| | ) | **(Relating to Case No. 1:12-cv-23466-** |
| **BIOTRONIK, INC.,** | ) | **SEITZ/SIMONTON, pending in the** |
| | ) | **United States District Court for the** |
| **Defendant** | ) | **Southern District of Florida)** |
| | ) | |
| | ) | |
| **BOSTON SCIENTIFIC CORP.,** | ) | |
| | ) | |
| **Third Party** | ) | |
| _____ ) | | |

---

### THIRD PARTY BOSTON SCIENTIFIC CORP.'S MEMORANDUM IN OPPOSITION TO ST. JUDE MEDICAL, S.C. INC'S MOTION TO COMPEL DOCUMENTS RESPONSIVE TO SUBPOENA

---

Through its motion to compel, St. Jude Medical S.C., Inc. ("St. Jude") attempts to cast

the discovery fishing expedition for which one federal court has already admonished it in a

different direction, and against a non-party to the underlying lawsuit.  In the underlying lawsuit

that is pending in the Southern District of Florida, St. Jude originally sued two companies,

Biotronik, Inc. ("Biotronik USA") and Biotronik SE & Co. ("Biotronik SE"), a German entity,

claiming that the two Biotronik entities caused a breach in the terms of Biotronik USA's

employee agreements by manufacturing leads for other medical device companies, including

Boston Scientific.  However, the district court dismissed Biotronik SE from the underlying

lawsuit and denied St. Jude's requests for direct discovery from the German Biotronik entity

because it found that St. Jude "appear[ed] to be searching for potential additional causes of

action. This would be, by definition, a 'fishing expedition.'" (Exhibit A to Declaration of Daniel Gerhan ("Gerhan Dec."), at *6).  Through this motion, St. Jude now improperly seeks to obtain from third party Boston Scientific the very information that the federal court in Florida denied it.

Boston Scientific Corp. ("Boston Scientific") is not a party to the underlying litigation. In fact, Boston Scientific's only tie to the underlying lawsuit is an original equipment manufacturer ("OEM") agreement between Boston Scientific[1] and Biotronik GmbH & Co., K.G. ("Biotronik GmbH"), another German Biotronik entity. Even though St. Jude's claims against Biotronik SE have been dismissed, and its requests for discovery from Biotronik SE were denied, St. Jude continues to seek discovery regarding contracts executed by Biotronik's German entities through the subpoena in question. That subpoena seeks exhaustive records of the sales agreements between Boston Scientific and Biotronik GmbH, as well as Boston Scientific's communications with the FDA, its customers, its employees, Biotronik USA, Biotronik GmbH, and the press. St. Jude also requests that Boston Scientific produce samples of each product, label, package, and user manual for any product that Biotronik GmbH or Biotronik USA manufactured for Boston Scientific.

St. Jude summarized its own claims in a letter dated December 20, 2013, and attached as Exhibit F to the Declaration of Christopher Demetriades in support of St. Jude's motion to compel. (Dkt. 3.) It stated that the underlying litigation "involves key issues relating to whether Defendant Biotronik [USA] materially breached its sales agreements with the former Biotronik sales representatives by working with its sister company to sell Biotronik devices to [Boston Scientific and other CRM manufacturers], for resale in direct competition with Biotronik's own sales representatives." (*Id.* at 1-2.)

_____

[1] The OEM agreement is actually between Cardiac Pacemakers, Boston Scientific's indirect subsidiary, and Biotronik GmbH. Boston Scientific has assumed Cardiac Pacemakers' benefits and duties under the OEM agreement.

Notably, St. Jude already possesses evidence that Biotronik manufactured leads for Boston Scientific, and for other competitor companies, and neither Biotronik nor Boston Scientific denies this fact. Still, St. Jude insists that it needs far-reaching discovery about Boston Scientific's pricing, sales, and marketing efforts related to the Biotronik leads. This type of burdensome and exhaustive discovery may be appropriate for direct parties to litigation, but unduly burdens non-parties, particularly when much of the information St. Jude is seeking should be discovered directly from Biotronik.

Further, through its subpoena St. Jude is seeking to discover highly confidential proprietary information from a direct competitor. The discovery process should not be used to learn competitors' trade secrets, particularly when those trade secrets are, at best, only vaguely related to the underlying litigation. St. Jude dismisses these concerns by pointing to a protective order in the underlying case, but this order is insufficient to protect Boston Scientific's proprietary information, because it allows St. Jude's in house counsel to view even the most strictly designated documents. St. Jude's claims that it is unable to discover the information it needs from Biotronik USA are unconvincing, and its claim that the subpoena is narrowly tailored is flatly untrue.

### Standard

Courts decline to impose wide-ranging and burdensome discovery obligations on non-parties, particularly when the information sought is available from other sources. "Although discovery is by definition invasive, parties to a lawsuit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Cusumano v. Microsoft Corp.*, 162

F.3d 708, 717 (1st Cir. 1998) (denying motion to compel compliance with third party subpoena).

*See also Echostar Communs. Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998)

("Courts are required to balance the needs for discovery against the burdens imposed when

parties are ordered to produce information or materials, and the status of a person as a non-party

is a factor which weighs against disclosure.")

A party's alleged need to discover confidential information "is diminished when the

information is available elsewhere." *Am. Standard Inc. v. Pfizer, Inc.*, 828 F.2d 734, 743 (Fed.

Cir. 1987). Even though the relevance standard is broad, "the 'necessary' restriction may be

broader when a nonparty is the target of discovery." *Dart Indus. Co. v. Westwood Chem. Co.*,

649 F.2d 646, 649 (9th Cir. 1980).

## Discussion

St. Jude's remaining claims are solely against Biotronik USA. As a result, St. Jude's

claims turn on whether Biotronik USA breached its representative agreements with the Plaintiffs.

St. Jude's requests in its subpoena to Boston Scientific, however, are largely unrelated to

Biotronik USA's alleged breach and instead focus on Boston Scientific's sales and marketing

efforts, as well as OEM agreements between Boston Scientific and Biotronik GmbH. To the

extent that the requests do seek to discover evidence of Biotronik USA's actions, the discovery is

entirely duplicative of the documents St. Jude can discover from Biotronik USA itself. The

subpoena in question is not narrowly tailored, as St. Jude claims, but rather represents a fishing

expedition to recover extensive proprietary information from a competitor.

## I.     Biotronik USA is the Proper Source for the Information St. Jude Needs to Litigate its Case

St. Jude claims that it "either cannot obtain responsive documents elsewhere, or is being

told by Biotronik that it does not have access to such documents." (Dkt. 1 at 7.) Given that

Biotronik USA is the only remaining defendant in the underlying litigation, however, evidence of Biotronik USA's actions to prove its alleged breach of contract should be discovered from Biotronik USA itself. "Evidence which is sufficient to establish that any breach [of contract] occurred, ordinarily, is possessed by the two litigants themselves." *Echostar*, 180 F.R.D. at 395. St. Jude's claims do not rely on any actions by Boston Scientific– rather, St. Jude's claims rest exclusively on allegations regarding Biotronik USA's actions. Boston Scientific is not a party to the Biotronik sales representative agreements St. Jude claims were breached by Biotronik USA, and Boston Scientific is not in a position to know how Biotronik USA worked with its sister company, Biotronik GmbH, to perform the OEM agreements at issue.

In reality, St. Jude already has evidence that Biotronik supplies leads to other CRM manufacturers, and it had that evidence before it even filed suit against Biotronik. Attached to St. Jude's Complaint as Exhibit B is a memorandum to Biotronik's sales employees dated May 18, 2011, which states in boldface letters that "Three of five (60%) CRM companies are now relying on BIOTRONIK leads to complete their implant system offerings." (Dkt. 3, Ex. B at 34.) If St. Jude's theory is that Biotronik's sale of its leads to other manufacturers constitutes a breach of its contract, it would seem St. Jude already possesses the evidence it needs to prove these sales took place. To the extent that St. Jude seeks more or different information regarding Biotronik's OEM agreements, the proper source of that information is Biotronik, not third parties like Boston Scientific.

## II.     St. Jude's Remaining Requests are Significantly Overbroad

St. Jude's claim that its subpoena is narrowly tailored is contradicted by the numerous and overbroad requests it served on Boston Scientific. For example, Plaintiffs Mr. LaPadula and Mr. Mathison stopped working for Biotronik USA in September of 2012, more than a year

before St. Jude served the subpoena at issue. Still, St. Jude requested communications between

Boston Scientific's own employees and between Boston Scientific and Biotronik without any

temporal restrictions. In addition, St. Jude claims that it needs to discover information about

Boston Scientific's sales to determine whether the individual Plaintiffs lost sales revenue as a

result of Boston Scientific selling its OEM devices. This claim, however, does not justify the

scope of discovery St. Jude has requested.

     St. Jude's Complaint alleges that the Plaintiffs agreed to market, promote and sell

Biotronik USA Products "in certain defined areas of South Florida." (Dkt. 3, Ex. B at ¶ 16.) St.

Jude's subpoena, on the other hand, did not include any geographic limitations, and during meet

and confer discussions St. Jude agreed only to limit the geographic scope of its requests to the

United States as a whole. (Dkt. 1 at 10.) St. Jude has not offered any explanation as to why

Boston Scientific's sales of cardiac rhythm management ("CRM") devices outside Plaintiffs'

South Florida territory bear any relation to the underlying litigation. *See United States ex rel.*

*Regan v. Medtronic, Inc.*, No. 96-2309-MLB, 2000 U.S. Dist. LEXIS 22565 at *9-10 (D. Kan

July 7, 2000) ("When determining the scope of discovery, the natural focus is on the

geographical boundaries referenced within the complaint.  In the absence of some other

reasonable justification, the request for 'nationwide' discovery is patently overbroad.") (citing

*Mackey v. IBP, Inc.*, 167 F.R.D. 186, 195 (D. Kan. 1996)).

     At a base level, St. Jude has failed to show that the Biotronik USA sales representative

agreements (the "Agreements") at issue even implicate the leads that Biotronik GmbH sold to

Boston Scientific. The Agreements are filed under seal in the underlying action. However,

paragraph 15a of each of the Agreements granted the Plaintiff sales representatives the exclusive

right to "solicit orders *only* for the purchase of those Products which are authorized by Biotronik

in writing from time-to-time to be sold." (Declaration of Sean Donahue ("Donahue Dec.") at ¶ 6 (emphasis added).) There is no writing by Biotronik that authorizes any of the Plaintiff sales representatives to sell any Boston Scientific OEM device. (*Id.* at ¶ 7.)

In addition to seeking data about actual sale prices and volumes, St. Jude has requested documentation of Boston Scientific's prospective sales, including "any sales or marketing analysis or forecast by any BSC agent, employee, or sales representative" relating to the Boston Scientific OEM devices. (Dkt. 3, Ex. A at Request No. 20.) If St. Jude is seeking Boston Scientific's confidential sales data to demonstrate Plaintiffs' lost sales opportunities, there is no logical reason to seek marketing forecasts or data outside the relevant time frame and sales territory. The overbreadth of these requests is particularly concerning given St. Jude's admission that it competes with Boston Scientific in the "highly concentrated and intensely competitive" CRM industry. (Dkt. 1 at 4 n. 4; Dkt. 3, Ex. B at ¶15.)

### III.   St. Jude's Subpoena Improperly Seeks Confidential Information From a Competitor

Under Rule 26(c)(1)(G), the Court is empowered to protect Boston Scientific from annoyance, oppression, and undue burden and expense, including "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specific way[.]" Fed R. Civ. P. 26(c)(1)(G). Here, the information St. Jude seeks to compel is highly confidential commercial information, but St. Jude has failed to demonstrate an adequate need for that information.

St. Jude competes with Boston Scientific in the "intensely competitive" CRM market. (Dkt. 3, Ex. B at ¶15.) St. Jude's subpoena improperly seeks trade secrets from its competitor, including pricing information, confidential sales strategies, and sales volume data. In its motion to compel, St. Jude states that it "cannot determine Boston Scientific's sales volume or particular

sales amounts . . . except by records maintained by Boston Scientific." (Dkt. 1 at 13.) In the medical device industry, sales and pricing data is held in the strictest confidence and is highly valuable to competitors. (Gerhan Dec. at ¶ 9.) Boston Scientific treats its sales data as highly confidential and takes measures to protect the secrecy of that data, including limiting employees' access to the data and protecting it with passwords and network restrictions. (*Id.*) As such, the sales and pricing data St. Jude is seeking qualifies as a trade secret, and St. Jude bears the burden of showing that the requested discovery is both relevant and necessary. (*Id.*)

Similarly, Boston Scientific's marketing communications are both confidential and valuable to competitors. (*Id.* at ¶ 10.) Marketing forecasts and strategic communications are marked confidential and employees are instructed to treat them confidentially. (*Id.*) Revealing competitive marketing strategies to St. Jude, a direct competitor, would harm Boston Scientific. (*Id.*)

St. Jude itself admits that the CRM industry "is highly concentrated and intensely competitive." (Dkt. 3, Ex. B at ¶ 15.) Additionally, the agreement between Boston Scientific and Biotronik GmbH contains discussions of highly sensitive long-term business strategy. (Gerhan Dec. at ¶ 11.)These provisions are similarly valuable and highly confidential, and thus also qualify for heightened protection. In light of the significant overbreadth of St. Jude's requests and the sensitive nature of the sales data, St. Jude has not met its burden to compel the requested discovery.

Additionally, St. Jude's assertion that a protective order exists in the underlying case is not reassuring. The protective order allows St. Jude's in house attorneys to view any information Boston Scientific produces, even if that information is designated "Attorneys Eyes Only," so any confidential information that Boston Scientific produces will go directly into the hands of its

competitor. As such, the protective order does not provide meaningful protection from disclosure of Boston Scientific's trade secrets.

**IV.      Responding to St. Jude's Subpoena Would be Substantially Burdensome**

In addition to threating Boston Scientific's trade secrets, responding to St. Jude's subpoena would be tremendously burdensome to Boston Scientific. (Gerhan Dec. at ¶ 11.) In order to comply with St. Jude's broad requests, Boston Scientific would have to compile and review email and paper communications between all of its employees, customers, Biotronik, and the FDA. Boston Scientific sells CRM devices in every region of the United States, and uses an extensive sales network throughout the country to communicate with CRM customers. (*Id.* at ¶ 2.) In order to locate the requested communications alone Boston Scientific would have to interview dozens of employees, collect communications (including email, which would require technological forensics to locate the communications and translate them to a format that can be reviewed) and carefully review those communications to determine whether they are responsive. (*Id.* at ¶ 13.)These efforts would be incredibly costly (*Id.*) and are overly burdensome—especially for a non-party.

**V.      Specific Requests at Issue**

Pursuant to L.R. 37.1(b)(4), the following are the Requests at issue along with Boston Scientific's objections as to each. Boston Scientific will not restate each of its points of general argument, but instead incorporates the general arguments above in responding to each individual request.

**Request No. 1:** "Any and all Biotronik CRM Product Agreements between [Boston Scientific] and Biotronik presently in effect, or that was ever in effect at any time from January 1, 2006 to the present"

**Objections:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks

information that is not reasonably calculated to lead to the discovery of admissible evidence, improperly seeks the disclosure of confidential information and trade secrets from a competitor, and seeks documents relating to communications and exchanges between Boston Scientific, a non-party to this litigation, and Biotronik, a direct party to this litigation, which are readily available to St. Jude through direct discovery from Biotronik. A non-party should not be burdened with responding to discovery that is ascertainable from a party to the litigation through direct discovery. *See Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs"); *American Standard, Inc., v. Pfizer Inc.*, 828 F.2d 734, 743 (Fed. Cir. 1987) (holding that the need for discovery of confidential information "is diminished when the information is available elsewhere").

**Argument:** The OEM agreement in question is between Boston Scientific and Biotronik GmbH. St. Jude is aware that Biotronik GmbH, and not Biotronik USA, is the party to the contract with Boston Scientific, because Boston Scientific produced a copy of the relevant agreement with redactions to remove sensitive proprietary information. The redactions were proper, given that the OEM agreement contains information that is highly confidential, including sales pricing and quantities, design documents, and strategic information. This information would be highly valuable to a competitor in the CRM industry, and Boston Scientific carefully maintains the confidentiality of the information to prevent its disclosure to competitors like St. Jude. In order to discover valuable confidential information from its competitor, St. Jude must make a heightened showing of its need for such information. St. Jude has not satisfied that burden, nor can it, because the OEM agreements between Boston Scientific and Biotronik GmbH have not been shown to be sufficiently related to the underlying case.

Biotronik SE was dismissed from the underlying action for lack of personal jurisdiction. (Donahue Dec. at 4.) As a result, Boston Scientific's agreement with another German Biotronik entity, Biotronik GmbH, is no longer at issue. In fact, the court deciding the underlying litigation denied St. Jude's requests to discover information from Biotronik SE because it found St. Jude's requests constituted an improper fishing expedition. Specifically, the order dismissing Biotronik

SE from the case and denying St. Jude's discovery requests emphasized that the agreements at issue in the case define the term "Biotronik" as Biotronik USA, and make no reference to Biotronik SE or any other Biotronik entity. (Donahue Decl. at ¶ 4, Order at *3.) St. Jude now appears to be pursuing discovery outside the Southern District of Florida to avoid the Order in the underlying case. To the extent that St. Jude sincerely believes any contracts involving Biotronik GmbH are still relevant, it should seek to discover those documents through direct discovery of Biotronik USA.

Finally, as Boston Scientific has already pointed out, St. Jude knows that Biotronik GmbH manufactures leads for Boston Scientific and other CRM manufacturers, and neither Boston Scientific nor Biotronik USA disputes that fact. It is not clear why St. Jude believes it needs Boston Scientific's protected proprietary information to further probe the relationship between Boston Scientific and Biotronik GmbH, when neither company is a party to the underlying suit.[2]

**Request No. 3:** *"Any and all press releases, or marketing or promotional materials, ever issued by [Boston Scientific] that relate to any Biotronik CRM Product Agreement between [Boston Scientific] and Biotronik, or which relate to the sale of Biotronik CRM products by [Boston Scientific], whether under any Biotronik or [Boston Scientific] brand name or trademark"*

**Objections:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, and improperly burdens Boston Scientific to provide materials readily available to the general public.

<u>**Argument:**</u> Press releases, by their nature, are public documents. Boston Scientific's website contains press releases going back to 2004, and St. Jude has access to these documents

---

[2] <u>**Note Regarding Requests No. 2, 4, 7 and 8:**</u> St. Jude has omitted Requests No. 2, 4, 7, and 8 from its motion to compel, and is apparently not seeking to enforce those requests. St. Jude did not indicate its willingness to forego those requests during meet and confer discussions, but Boston Scientific will not respond to Requests No. 2, 4, 7, and 8 given that St. Jude has omitted those requests from its motion and is apparently not seeking to compel responses to them.

just as any other member of the general public would. With respect to marketing and

promotional materials, any materials Boston Scientific possesses related to Biotronik products

are related to the leads Boston Scientific purchased from Biotronik GmbH, not Biotronik USA,

and as discussed above these leads are not related to the Plaintiffs' Representative Agreements.

**Request No. 5:** "All communications between (a) [Boston Scientific] (including any
representative or attorney of [Boston Scientific]) and (b) Biotronik (including any
representative or attorney of Biotronik) relating to any Biotronik CRM Product Agreement
between [Boston Scientific} and Biotronik"

**Objections:** Boston Scientific states that this request is overbroad and unduly burdensome
because it lacks particularity as to relevant time frame and geographic scope, seeks
information that is not reasonably calculated to lead to the discovery of admissible evidence,
improperly seeks the disclosure of confidential information and trade secrets from a
competitor, and seeks documents relating to communications and exchanges between Boston
Scientific, a non-party to this litigation, and Biotronik, a direct party to this litigation, which
are readily available to St. Jude through direct discovery from Biotronik.

      <u>**Argument:**</u> This request is overbroad and not reasonably calculated to lead to the

discovery of admissible evidence for the reasons discussed in response to Request No. 1,

including the fact that Boston Scientific's agreement is with Biotronik GmbH and contains

confidential proprietary information that St. Jude has not demonstrated a sufficient need to

discover.

**Request No. 6:** "All communications between (a) [Boston Scientific] (including any
representative or attorney of [Boston Scientific]) and (b) Biotronik (including any
representative or attorney of Biotronik) relating to any Biotronik CRM Product manufactured
for, or otherwise supplied to, [Boston Scientific]"

**Objections:** Boston Scientific states that this request is overbroad and unduly burdensome
because it lacks particularity as to relevant time frame and geographic scope, seeks
information that is not reasonably calculated to lead to the discovery of admissible evidence,
improperly seeks the disclosure of confidential information and trade secrets from a
competitor, and seeks documents relating to communications and exchanges between Boston
Scientific, a non-party to this litigation, and Biotronik, a direct party to this litigation, which
are readily available to St. Jude through direct discovery from Biotronik.

**Argument:** As discussed above, Boston Scientific should not be subjected to the burden and expense of producing documents that are available to St. Jude through direct discovery of Biotronik USA. Any communications between Boston Scientific and Biotronik USA are available to St. Jude through direct discovery from Biotronik USA. Further, St. Jude's claim that it needs to discover communications between Boston Scientific and Biotronik GmbH are unconvincing, considering the trial court has already excluded Biotronik GmbH from the underlying litigation and deemed St. Jude's attempts to discover further information from Biotronik GmbH a fishing expedition.

**Request No. 9:** "All communications between (a) [Boston Scientific] (including any representative or attorney of [Boston Scientific]) and (b) Biotronik (including any representative or attorney of Biotronik) relating to, referencing or providing copies of any communications or approvals from the U.S. Food & Drug Administration (the "FDA") or any equivalent foreign regulatory agency, relating to the ability to sell any Biotronik CRM Product in the United States, including, but not limited to, communications related to premarket approval, post-market monitoring, regulations and/or oversight as to any Biotronik CRM Product manufactured for, or otherwise supplied to, [Boston Scientific]"

**Objections:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, improperly seeks the disclosure of confidential information and trade secrets from a competitor, and seeks documents relating to communications and exchanges between Boston Scientific, a non-party to this litigation, and Biotronik, a direct party to this litigation, which are readily available to St. Jude through direct discovery from Biotronik.

**Argument:** In support of St. Jude's requests to discover communications relating to FDA approval, paragraph 18 of the Declaration of Christopher P. Demetriades attaches as Exhibit H "copies of certain publicly available documents" that were filed by the FDA. (Dkt. 3 at ¶ 18.) The Demetriades Declaration claims that these documents "appear to reflect efforts undertaken by Biotronik in the past, the litigant in the Main Action, to secure FDA approval for the use of Biotronik [USA] manufactured products in conjunction with Boston Scientific CRM devices." (*Id.*)

Exhibit H to the Demetriades Declaration consists of two premarket approval application ("PMA") letters from the FDA. (Declaration of Jon Brumbaugh at ¶ 3.) The first is an April, 2005 letter concerning the Rithron-XR Coronary Stent System (the "Rithron") and the second is a September, 2000 letter addressing the Phylax AV Implantable Cardioverter Defibrillator with Programmer Software (the "Phylax"). (*Id.*)

Boston Scientific had nothing to do with the FDA's approval of either the Rithron or the Phylax. More importantly, Boston Scientific did not "secure FDA approval for the use of [these devices] in conjunction with Boston Scientific CRM devices" as the Demetriades Declaration claims. (*Id.* at ¶ 4, Dkt. 3 at ¶ 18.) The Rithron was manufactured and distributed by Biotronik AG, a Swiss company, and the Phylax was developed and manufactured by Biotronik GmbH. (Brumbaugh Dec. at ¶ 5.) Boston Scientific had nothing to do with the manufacture or distribution of either the Rithron or the Phylax. (*Id.*)

St. Jude appears to be aware that documents regarding FDA approval should be discovered directly from Biotronik USA, as it alleges in its motion to compel that "Biotronik itself, however, facilitated the program in various ways, including through the procurement of FDA approval that enabled the competing CRM companies to sell Biotronik CRM devices" (Dkt. 1 at 3 n. 3). Accordingly, St. Jude's attempts to discover information regarding FDA approval of Biotronik USA or Biotronik GmbH products should be directed to Biotronik USA, not Boston Scientific.

**Request No. 10:** "All communications between (a) [Boston Scientific] (including any representative or attorney of [Boston Scientific]) and (b) The FDA (including any representative or attorney of the FDA) relating to any Biotronik CRM Product Agreement between [Boston Scientific] and Biotronik"

**Objections:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence,

and improperly seeks the disclosure of confidential information and trade secrets from a competitor.

    **Argument:** See the argument with respect to Request No. 9, above.

    **Request No. 11:** "All communications between (a) [Boston Scientific] (including any representative or attorney of [Boston Scientific]) and (b) The FDA (including any representative or attorney of the FDA) relating to any Biotronik CRM Product"

    **Objections:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, and improperly seeks the disclosure of confidential information and trade secrets from a competitor.

    **Argument:** See the argument with respect to Request No. 9, above.

**Request No. 12:** "All documents that [Boston Scientific] received from Biotronik relating to the sales of, marketing of or support for any Biotronik CRM Product manufactured for, or otherwise supplied to, [Boston Scientific]"

**Objections:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, improperly seeks the disclosure of confidential information and trade secrets from a competitor, and seeks documents relating to communications and exchanges between Boston Scientific, a non-party to this litigation, and Biotronik, a direct party to this litigation, which are readily available to St. Jude through direct discovery from Biotronik.

    **Argument:** This request also implicates documents that the request itself indicates

Biotronik USA should possess, and accordingly St. Jude should seek the documents or

information it needs directly from Biotronik USA. To the extent that St. Jude is seeking to

discover information relating to the actions of Biotronik's German entities and believes that

those entities' actions were sufficiently distinct from Biotronik USA such that Biotronik USA

does not possess any related documents, those claims have already been dismissed by the trial

court when it dismissed Biotronik SE from the underlying action and refused to grant direct

discovery from Biotronik SE. (*See* Gerhan Dec., Exhibit A, Order Granting Mtn to Dismiss.)

15

**Request No. 13:** "Samples of each Biotronik CRM Product ever manufactured for, or otherwise supplied to, [Boston Scientific]"

**Objections:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, improperly seeks the disclosure of confidential information and trade secrets from a competitor, and seeks items from Boston Scientific, a non-party to this litigation, which are readily available to St. Jude through direct discovery from Biotronik, a direct party to this litigation.

**Argument:** In the intensely competitive field of cardiac rhythm management, a company seeking to discover samples of its competitors' products warrants particular concern. This request is even more concerning due to its overbreadth—it is not limited to products that Plaintiffs sold, or to the timeframe in which Plaintiffs were employed as sales representatives for Biotronik USA. Additionally, the Representative Agreements at issue in the underlying lawsuit granted the Plaintiff sales representatives the exclusive right to "solicit orders *only* for the purchase of those Products which are authorized by Biotronik in writing from time-to-time to be sold" (Donahue Dec. at ¶ 6 (emphasis added)) and there is no writing by Biotronik that authorizes any of the Plaintiff sales representatives to sell any Boston Scientific OEM device. (*Id.* at ¶ 7.) As such, St. Jude does not need samples of any Boston Scientific OEM device to prosecute its case against Biotronik, and St. Jude cannot overcome the burden of demonstrating the necessity of such samples.

**Request No. 14:** "Representative samples of each label for each Biotronik CRM Product ever manufactured for, or otherwise supplied to, [Boston Scientific]"

**Objections:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, and seeks items from Boston Scientific, a non-party to this litigation, which are readily available to St. Jude through direct discovery from Biotronik, a direct party to this litigation.

**Argument:** This request is not reasonably calculated to lead to the discovery of admissible evidence for the reasons discussed in the argument related to Request No. 13, above. Namely, the products Biotronik manufactured for Boston Scientific are neither implicated by the Biotronik USA's Agreements nor at issue in the underlying litigation. Further, in order to be relevant to the underlying matter St. Jude must demonstrate that the requested materials bear some relation to the defendant, Biotronik USA. If that were the case, Biotronik USA should possess documents responsive to this request and St. Jude should seek the evidence it needs direction from Biotronik USA.

**Request No. 15:** "Representative samples of each package for each Biotronik CRM Product ever manufactured for, or otherwise supplied to, [Boston Scientific]"

**Objections:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, and seeks items from Boston Scientific, a non-party to this litigation, which are readily available to St. Jude through direct discovery from Biotronik, a direct party to this litigation.

**Argument:** See the argument with respect to Requests No. 13 and 14, above.

**Request No. 16:** "Representative samples of each user manual associated with any Biotronik CRM Product ever manufactured for, or otherwise supplied to, [Boston Scientific]"

**Objections:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, and seeks items from Boston Scientific, a non-party to this litigation, which are readily available to St. Jude through direct discovery from Biotronik, a direct party to this litigation.

**Argument:** See the argument with respect to Requests No. 13 and 14, above.

**Request No. 17:** "Representative samples of each physician's manual that [Boston Scientific] ever provided with, or in relating to, any Biotronik CRM Product sold or offered for sale by [Boston Scientific]"

**Objections:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, improperly seeks the disclosure of confidential information and trade secrets from a

competitor, and seeks items from Boston Scientific, a non-party to this litigation, which are readily available to St. Jude through direct discovery from Biotronik, a direct party to this litigation.

**Argument:** See the argument with respect to Requests No. 13 and 14, above.

**Request No. 18:** "Copies of all complaints, communications, papers, pleadings claims or lawsuits relating to any Biotronik CRM Product sold or offered for sale by [Boston Scientific]"

**Objections:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, improperly seeks the disclosure of confidential information and trade secrets from a competitor, improperly seeks the disclosure of information protected by the attorney-client privilege, and seeks items or information from Boston Scientific, a non-party to this litigation, which are readily available to St. Jude through direct discovery from Biotronik, a direct party to this litigation.

**Argument:** St. Jude argues that it is seeking complaints regarding the Boston Scientific OEM devices in this request, and that such complaints may involve technical support from Biotronik USA. However, by requesting all "communications" and "papers" related to the Boston Scientific OEM devices, St. Jude's request is seeking substantially more information than just complaints, claims, or lawsuits.  Rather, the request would implicate Boston Scientific's internal sales strategies and records that do not involve any Biotronik entity. Because St. Jude has only agreed to limit the geographic scope of its requests to the United States as a whole, this request would also require the production of extremely voluminous records for regions that are entirely unrelated to Plaintiffs' South Florida territory. Further, the leads that Biotronik manufactures for Boston Scientific are often sold as a package with other Boston Scientific devices that are not manufactured by Biotronik, and thus communications regarding sales of the Biotronik leads would necessarily disclose highly sensitive information regarding sales of Boston Scientific's other CRM devices.

As a direct competitor in the CRM industry, St. Jude stands to benefit greatly from learning about Boston Scientific's sales figures and marketing strategies related to its CRM devices. St. Jude has given no justification as to why Boston Scientific's sales strategies and figures bear any relation whatsoever to Biotronik USA's alleged breach of contract, and the request itself makes no indication that St. Jude is seeking to discover documents that relate to Biotronik's actions. Rather, St. Jude is improperly seeking nationwide sales strategies and statistics from a non-party whose actions are not at issue in the underlying litigation.

This request would also be enormously burdensome for Boston Scientific. Boston Scientific's nationwide CRM sales force involves thousands of employees, ranging from sales representatives and clinical technicians to regional managers, account managers, and sales directors. Reviewing communications between this extensive sales network would require a great deal of time and money, in addition to exposing Boston Scientific to the significant risk that its competitor will learn its valuable proprietary information.

**Request No. 19:** "Any communication by any [Boston Scientific] agent, employee or sales representative relating to [Boston Scientific's] sale or marketing of any Biotronik CRM Product"

**Objections:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, improperly seeks the disclosure of confidential information and trade secrets from a competitor, and improperly seeks the disclosure of information protected by the attorney-client privilege.

**Argument:** In support of this request, St. Jude merely references Requests No. 3, 5, and 12. While it is true that the request is overbroad for the same reasons as Requests No. 3, 5, and 12, in that it implicates the OEM agreement between Biotronik GmbH and Boston Scientific, this request is substantially broader than the others. By requesting any communication by Boston Scientific's employees, St. Jude creates the same overbreadth issues as it did with Request No.

18 and 19, but by specifically requesting communications between Boston Scientific's

employees without any reference to Biotronik USA's participation or involvement, St. Jude is

seeking to discover communications which do not implicate Biotronik in any way. Thus, the

explanation St. Jude offered in support of request No. 18—that it was seeking to discover

Biotronik USA's involvement in remedying complaints—does not justify the scope of either

request.

> **Request No. 20:** "Any sales or marketing analysis or forecast by any [Boston Scientific] agent, employee or sales representative relating to [Boston Scientific's] sale or marketing of any Biotronik CRM Product"
>
> **Objections:** Boston Scientific states that this request is overbroad and unduly burdensome because it lacks particularity as to relevant time frame and geographic scope, seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, and improperly seeks the disclosure of confidential information and trade secrets from a competitor.

<u>**Argument:**</u> See the argument related to Request No. 19. Boston Scientific notes that St.

Jude has also failed to provide any additional justification for this request, which plainly

implicates highly sensitive and valuable proprietary information.

## Conclusion

The subpoena before this Court is an extension of the same fishing expedition St. Jude

has attempted in the Southern District of Florida. In this case, however, Boston Scientific is even

more removed from the underlying lawsuit. St. Jude's justification that Biotronik USA has

claimed it does not possess the requested materials is not compelling, and does not validate St.

Jude's overly broad and unduly burdensome subpoenas of non-party Boston Scientific.

Accordingly, Boston Scientific respectfully requests that this Court deny St. Jude's motion to compel in its entirety.

Respectfully submitted,

BOSTON SCIENTIFIC CORP.

By its attorneys,

/s/ Timothy D. Johnston
Terence P. McCourt, BBO #555784
Timothy D. Johnston, BBO #647894
GREENBERG TRAURIG, LLP
One International Place
Boston, MA  02110
Tel:  (617) 310-6000
Fax:  (617) 310-6001
johnstont@gtlaw.com

Of Counsel:

FAEGRE BAKER DANIELS LLP
Robert L.  Schnell, Jr., (pro hac vice pending)
*robert.schnell@faegreBD.com*
Hanna L. Terhaar (pro hac vice pending)
*hanna.terhaar@faegreBD.com*
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
DATED:  February 5, 2014          (612) 766-7000


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicted as non registered participants on February 5, 2014.


/s/ Timothy D. Johnston
Timothy D. Johnston

21