UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ST. JUDE MEDICAL S.C., INC., <br><br> Plaintiff <br><br> v. <br><br> BIOTRONIK, INC., <br><br> Defendant <br><br> BOSTON SCIENTIFIC CORP., <br><br> Third Party | Civil Action No. 1:14-mc-91022-FDS <br><br> (Relating to Case No. 1:12-cv-23466-SEITZ/SIMONTON, pending in the United States District Court for the Southern District of Florida) |

**THIRD PARTY BOSTON SCIENTIFIC CORP.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH ST. JUDE MEDICAL S.C., INC.'S SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION DATED APRIL 15, 2014**

Boston Scientific Corp. ("Boston Scientific") respectfully moves the Court to quash the Subpoena to Testify at a Deposition in a Civil Matter (the "Subpoena") that was issued from the Southern District of Florida at the request of St. Jude Medical, S.C., Inc. ("St. Jude") on April 15, 2014 and requires compliance in this district.

St. Jude originally issued a similar subpoena from this Court, which was the subject of Boston Scientific's motion to quash of April 14, 2014. In its Opposition to that motion, St. Jude conceded that the original subpoena did not comply with the requirements of Rule 45, but argued that the subsequent Subpoena cured the defects of the original subpoena. Boston Scientific therefore assumes that St. Jude has abandoned the original, defective subpoena, and Boston Scientific now respectfully moves to quash the subsequent Subpoena.

## **INTRODUCTION**

St. Jude has served four subpoenas on Boston Scientific that contain the same or similar lists of over-reaching requests. The instant Subpoena, and its defective predecessor, request testimony on the exact list of topics[1] St. Jude propounded in its original subpoena for documents, which was the subject of a hearing before this Court on March 5, despite this Court's instruction that St. Jude do its best to limit St. Jude's requests to those "which are genuinely needed by St. Jude in the Florida litigation." (3/14/14 Order, Dkt. 37.)

For a time it appeared that St. Jude was honoring the Court's admonition. Counsel for St. Jude conferred with Boston Scientific and negotiated a narrowed scope of production, which was reflected in the Joint Status Report filed with this Court on March 26, 2014.  The Joint Status report stated that Boston Scientific would produce an unredacted copy of the OEM Supply Agreement, a spread sheet showing the Dextrus lead sales in the three relevant Florida territories, and a sample Dextrus lead in its package. (*See* Joint Status Report Regarding Discovery, Dkt. 39, at ¶ 2.)  Boston Scientific produced each of these things immediately after a Protective Order was entered, and further completed an ESI review according to negotiated parameters and produced the results of that review to St. Jude.

The instant Subpoena does not reflect a narrowed list of topics to which St. Jude genuinely needs testimony after meeting and conferring with Boston Scientific and receiving several productions from Boston Scientific—rather, it reflects more of the same behavior St. Jude has been exhibiting for months, where it expends no time or effort considering how the

---

[1] The list of topics and subject matter for a 30(b)(6) representative in the present Subpoena also includes Request No. 21, which seeks sales data for Boston Scientific's resale of Biotronik OEM devices. This request was not present in St. Jude's original subpoena for documents and things, but was served in a second subpoena for documents and things shortly after the hearing regarding the motion to compel before this Court in March.

burdens of third-party discovery could be reasonably limited, and instead demands that Boston Scientific respond to the same overly-burdensome list of topics time and time again.

## ARGUMENT

### I. St. Jude Has Made No Effort to Limit the Scope of its Subpoena, and the Topics for Testimony are Vastly Overbroad

In its Opposition to Boston Scientific's Motion to Quash the original, defective subpoena, St. Jude characterized the subject matter for the testimony it is seeking from Boston Scientific as:

> the factual scope and legal impact of the OEM program under which Biotronik's sister entity, with the cooperation of Biotronik, manufactured CRM products to [*sic*] competitors, such as BSC, in territories and to accounts to which Biotronik's sales representatives, such as Plaintiffs LaPadula and Mathison, had enforceable contractual rights with which Biotronik had a contractual duty not to interfere.

(Dkt. 47 at 5.) On that topic, Boston Scientific has already produced exactly what the parties told the Court Boston Scientific would produce—the OEM Agreement, OEM lead sales data, an exemplar cardiac lead in its original packaging, and email communications between Boston Scientific and Biotronik regarding the OEM program.

St. Jude's requested topics for testimony, however, are not limited to the subject matter St. Jude cites in its opposition, nor are they limited by or related to the documents Boston Scientific has already provided. No witness could be properly prepared to testify to the broad list of topics St. Jude has propounded. For example, topics 7, 8, and 19 seek testimony regarding communications between Boston Scientific and its actual or potential CRM customers relating to any Biotronik CRM Product Agreement[2] or to the leads manufactured by Biotronik. As St. Jude and this Court are aware, Boston Scientific relies on individual sales representatives to

---

[2] St. Jude's definition of "Biotronik CRM Product Agreement" seeks information about agreements between Boston Scientific and Biotronik where such products are to be sold by Sorin Group USA, Inc.'s personnel (emphasis added). Boston Scientific has no such agreements.

3

communicate with customers and discuss the products Boston Scientific offers. Not only is this topic unrelated to any actions by Biotronik, but it is also prohibitively broad such that no corporate witness could possibly be prepared to testify to all communications between Boston Scientific and its CRM customers regarding sales of pacemaker leads, a commonly-discussed product in the cardiac device industry. Similarly, none of the requests are geographically limited to the Plaintiffs' South Florida territory, the only geography at issue in this case, but rather apparently seek information about Boston Scientific's actions throughout the world.

Courts routinely hold that 30(b)(6) testimony topics are inappropriate when no person could reasonably be prepared to testify to such a broad scope of information. *See, e.g., Intermedics, Inc.* v. *Cardiac Pacemakers, Inc.,* 1998 WL 35253493, at *2 (D. Minn. Apr. 10, 1998) (where examination "would require encyclopedic knowledge which is not humanly possible," it is "beyond the scope of Rule 30(b)(6)"); *SmithKline Beecham Corp.* v. *Apotex Corp.,* 2000 WL 116082, at *10 (N.D. Ill. Jan. 24, 2000) ("[T]he recipient of a Rule 30(b)(6) request is not required to have its counsel muster all of its factual evidence to prepare a witness to be able to testify regarding a defense or a claim."). Here, Boston Scientific cannot prepare any witness to testify to all communications between its employees and its customers for *any* geographic scope, let alone on a worldwide basis, because such communications happen many times per day, between many different employees and customers, through live conversations, emails, text messages, and phone calls.

## II. Boston Scientific Has Already Produced The Information St. Jude Claims it Needs to Pursue its Case, and Should Not Be Subjected to Further Burden

Boston Scientific has already produced a number of documents to St. Jude, including email communications with Biotronik, the OEM agreement and its amendments, and the product

4

itself in its original packaging.[3] St. Jude already has the information it genuinely needs to pursue its case against Biotronik, and non-party Boston Scientific should not be required to prepare a corporate witness to testify about the vast array of topics St. Jude has propounded, particularly when the documents Boston Scientific has produced are sufficient on their own. *See McCormick-Morgan, Inc.* v. *Teledyne Indus. Inc.,* 134 F.R.D. 275, 286 (N.D. Cal. 1991) (in determining the appropriate scope of a 30(b)(6) deposition, the appropriate inquiry is "which of the available [discovery] devices is most appropriate, *i. e.,* which device would yield most reliably and in the most cost-effective, least burdensome manner information that is sufficiently complete to meet the needs of the parties and the court"). If St. Jude feels it genuinely requires additional information from Boston Scientific, after having reviewed the emails, documents, and lead it already received, and which it agreed would be adequate compliance with the documents subpoena, St. Jude should identify the limited topics for which it still lacks information.

Instead, St. Jude has made no effort whatsoever to limit its testimony requests to exclude topics for which it has already obtained sufficient information through document production and public sources. For example, topics 1, 2, 3, and 4 seek information about the OEM agreement itself and Boston Scientific's press releases—the former having been previously produced in this matter, and the latter being publicly available on Boston Scientific's website. St. Jude does not need testimony from a corporate representative for these topics, and Boston Scientific should not be subjected to the burden of preparing a witness to provide unnecessary testimony. Topics 5, 6, and 9 seek testimony regarding

---

[3] Neither St. Jude nor Boston Scientific questions the authenticity of any documents Boston Scientific has produced to St. Jude, and Boston Scientific has offered to provide a stipulation to the documents' authenticity should St. Jude need one. Accordingly, no deposition testimony is required to establish authenticity of the documents.

communications between Boston Scientific and Biotronik, but Boston Scientific has already produced the relevant communications themselves, by reviewing and producing emails between relevant Boston Scientific employees and Biotronik. Similarly, topics 13, 14, 15, 16, and 17 relate to labeling, manuals, and packaging for the leads that Biotronik manufactured for Boston Scientific. Boston Scientific has already produced an exemplar lead, in its package, and should not be required to prepare a corporate witness to testify to those materials beyond their contents, which St. Jude already possesses.

## CONCLUSION

Boston Scientific has expended significant time meeting and conferring with counsel for St. Jude, appearing before the Court, and gathering, reviewing, and producing documents to facilitate St. Jude's lawsuit in the Southern District of Florida. In response, and before it had even received Boston Scientific's entire production, St. Jude has served a subpoena for testimony that reflects absolutely no effort to limit the additional burden on Boston Scientific, this time of preparing for an extensive and wholly unnecessary deposition. Boston Scientific therefore respectfully requests that the Court quash the instant Subpoena as overbroad and unduly burdensome given the circumstances.

Respectfully submitted,
**BOSTON SCIENTIFIC CORP.**
By its attorneys,

/s/ Timothy D. Johnston
Terence P. McCourt, BBO #555784
Timothy D. Johnston, BBO #647894
GREENBERG TRAURIG, LLP
One International Place
Boston, MA  02110
Tel:  (617) 310-6000
Fax:  (617) 310-6001
johnstont@gtlaw.com

6

|  |  |
|---|---|
|  | FAEGRE BAKER DANIELS LLP |
|  | Robert L. Schnell, Jr. (*pro hac vice*) |
|  | *robert.schnell@faegreBD.com* |
|  | Hanna L. Terhaar (*pro hac vice*) |
|  | *hanna.terhaar@faegreBD.com* |
|  | 2200 Wells Fargo Center |
|  | 90 South Seventh Street |
|  | Minneapolis, MN  55402-3901 |
| DATED:  April 28, 2014 | (612) 766-7000 |

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicted as non registered participants on April 28, 2014.

/s/ Timothy D. Johnston
Timothy D. Johnston